**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JAMES D. BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Cause No. 1:12-cv-1814-WTL-MJD |
| CAROLYN W. COLVIN, acting | ) |
| Commissioner of the Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff James D. Baker requests judicial review of the final decision of Defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), denying Mr. Baker's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

### I.   PROCEDURAL HISTORY

James Baker protectively filed for SSI and DIB on September 22, 2011, alleging he became disabled on January 1, 2007, due to mental and physical impairments. Mr. Baker's application was denied initially on November 22, 2011, and again upon reconsideration on February 17, 2012. Following the denial upon reconsideration, Mr. Baker requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, where Mr. Baker appeared pro se, was held in front of ALJ Ronald T. Jordan on May 3, 2012. The ALJ

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration after this case was filed. She is therefore substituted as the Defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

issued his decision denying Mr. Baker's claim on July 17, 2012. The Appeals Council denied Mr. Baker's request for review on October 16, 2012. After the Appeals Council denied review of the ALJ's decision, Mr. Baker filed this timely appeal.

## II. EVIDENCE OF RECORD

The evidence of record is aptly set forth in Mr. Baker's brief. Specific facts are set forth in the discussion section below where relevant.

## III. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity ("SGA") he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[2] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV.   THE ALJ'S DECISION

The ALJ determined at step one that Mr. Baker had not engaged in substantial gainful activity since January 1, 2007, the alleged onset date. At steps two and three, the ALJ concluded that Mr. Baker has the severe impairments of "degenerative joint disease of the right shoulder, obesity, depression, dysthymia, posttraumatic stress disorder (PTSD), anxiety, and polysubstance dependence in remission," R. at 18, but that his impairments, singly or in combination, did not

meet or medically equally a listed impairment. At step four, the ALJ determined that Mr. Baker had the RFC to perform light work with the following restrictions:

> [H]e can lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently. He can stand and walk six hours in an eight-hour day. He can sit six hours in an eight-hour day. He can occasionally balance, stoop, crouch, and climb stairs and ramps. He cannot crawl or climb ladders, ropes, or scaffolds. The work must be limited to simple, repetitive tasks requiring no independent judgment regarding work processes. Working goals from day to day must be static and predictable. He should not be required to engage with the general public and can have only occasional, superficial contact with coworkers.

*Id*. at 21. Given that RFC, the ALJ determined that he could not perform any of his past relevant work. Finally, at step five the ALJ determined that Mr. Baker could perform a range of light work that exists in the national economy, including an apparel sorter, packer, and housekeeper. Accordingly, the ALJ concluded that Mr. Baker was not disabled as defined by the Act.

## V. **DISCUSSION**

In his brief in support of his Complaint, Mr. Baker alleges the ALJ: 1) failed to obtain a valid waiver of counsel; 2) erred in concluding that his combination of impairments did not meet or medically equal Listing 12.04; 3) failed to obtain testimony from a psychologist regarding whether he medically equaled Listing 12.04; 4) erred in his credibility determination; and 5) erred in his Step Five determination. Each of his arguments will be addressed below.

### A. Waiver of Counsel

Mr. Baker first argues that the ALJ did not obtain a valid waiver of counsel at the hearing. The Seventh Circuit requires the ALJ to explain the following to a pro se claimant at the hearing: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991)). A

4

review of the hearing transcript reveals that the ALJ did not obtain a valid waiver from Mr. Baker because he did not explain the benefits that an attorney might provide, nor did he mention that Mr. Baker might have obtained free counsel or the limitation of attorney's fees to twenty-five percent of past-due benefits. While the Commissioner argues that various written correspondence that the agency sent to Mr. Baker explained these things to him, clear Seventh Circuit precedent directs the ALJ to advise pro se claimants of these rights *at the hearing*. Clearly, the ALJ did not do so in this case.[3]

Nevertheless, reversal is not warranted if the ALJ adequately developed the record. *See Binion*, 13 F.3d at 245 ("[A] claimant is not entitled to a remand based on inadequate notice of the right to representation unless the ALJ did not develop a full and fair record."). The Seventh Circuit has added teeth to this requirement, noting that the ALJ must "scrupulously and conscientiously probe into, inquire of and explore for all of the relevant facts" and that the

---

[3] Mr. Baker also takes issue with the conversation between himself and the ALJ regarding his representation:

| ALJ: | [Y]ou are entitled to counsel, and [] we can postpone your hearing, if you like, for a couple of months to give you the opportunity to obtain counsel. It's up to you, clearly up to you. |

| Mr. Baker: | I'd just as soon go ahead and get it over with. |

| ALJ: | All right. Okay. So your [sic] good then. A lot of claimants come in here and represent themselves. So that's fine. |

R. at 37. Mr. Baker argues that the ALJ "emphasized that the hearing could be delayed" if Mr. Baker chose to obtain counsel. Pl.'s Reply at 3. He also argues that the "ALJ seemed to encourage him to waive counsel" by informing him that other claimants represent themselves. *Id*. The Court does not agree. The ALJ rightly informed Mr. Baker that the hearing would have to be postponed if he obtained counsel—he did not emphasize this fact, but simply passed along a piece of truthful information for Mr. Baker to ponder as he made his decision. Further, the ALJ did not encourage Mr. Baker to waive counsel. He said "[a] lot of claimants come in here and represent themselves" *after* Mr. Baker waived his counsel. The ALJ simply told Mr. Baker that many other claimants also choose to represent themselves just like he chose to do. This was not an "encouragement."

5

burden to show this is properly placed on the Commissioner. *Id*. (quoting *Smith v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978)).

The Court finds that the Commissioner has met her burden in this case of proving that the ALJ fully and fairly developed the record. The hearing lasted over an hour, comprising mostly of Mr. Baker's own testimony. The ALJ inquired into Mr. Baker's past work experiences, living situation, current treatment plan, medications, pain, physical and mental limitations, and daily activities. *See id*. (finding that the ALJ fully and fairly developed the record by probing "into all of the relevant areas, questioning plaintiff about the medical evidence in the file, her medication, pain, daily activities, and physical ability to perform a number of activities."). The ALJ also sent Mr. Baker for a physical examination due to his shoulder and neck pain and obtained the MRI report as requested by Mr. Baker. In reviewing the hearing transcript as well as the ALJ's decision, the Court agrees with the Commissioner that the ALJ fully and fairly developed the record.

"Once the Secretary establishes that the record was developed fully and fairly, the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap." *Binion*, 13 F.3d at 245. Mr. Baker alleges that the ALJ failed to obtain a medical advisor to testify whether his impairments medically equaled any Listing. In failing to do so, Mr. Baker argues that "the ALJ was improperly relying on his own layperson's opinions regarding the issue[] of medical equivalence." Pl.'s Reply at 8. The Commissioner argues that the ALJ was not required to obtain additional evidence because "[t]he record was adequately developed on this issue, as the ALJ had several medical expert opinions already, from state agency reviewing consultants, that indicated Plaintiff's combined impairments did not meet or medically equal a listing[.]" Response at 12. The Court agrees.

6

Social Security Ruling ("SSR") 96-6p[4] provides:

> The administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge or the Appeals Council is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.

The Seventh Circuit has noted that compliance with SSR 96-6p can be met with Disability Determination and Transmittal forms ("the Forms"), and that the ALJ need not summon a medical expert to testify at the hearing if a medical expert has signed the Forms that address medical equivalency. *See Farrell v. Sullivan,* 878 F.2d 985, 990 (7th Cir. 1989) (noting that the requirements were satisfied with regard to medical equivalency because two physicians signed the Forms and substantial evidence in the record supported the ALJ's determination that the claimant did not medically equal a listing); *see also Scheck*, 357 F.3d at 700 ("These forms conclusively establish that consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. The ALJ may properly rely upon the opinion of these medical experts.") (internal citations and quotation marks omitted). The Court finds, therefore, no error in the ALJ's failure to call a separate medical expert to testify at the hearing regarding medical equivalency.

---

[4] Mr. Baker actually argues that the ALJ violated SSR 96-7p by failing to call a medical expert to testify on the issue of medical equivalency. SSR 96-7p provides guidance to ALJs with regard to making credibility determinations. The Court presumes Mr. Baker meant to cite to SSR 96-6p.

7

## B. Listing 12.04: Affective Disorders

Mr. Baker next argues that the ALJ erred in finding that his mental impairments do not meet or medically equal listing 12.04, affective disorders. Listing 12.04 requires the satisfaction of both paragraphs A and B or that the requirements in paragraph C are met.[5] The ALJ found that Mr. Baker did not meet or equal the requirements in paragraph B, which require at least two of the following: 1) marked restriction of activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, app. 1. A marked restriction means "more than moderate but less than extreme" and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id*.

In his decision, the ALJ found that Mr. Baker had mild restrictions of daily living, noting that Mr. Baker has no problems with personal hygiene, manages his own money, is able to drive, and spends a majority of his day watching television and using the computer. R. at 19. The ALJ found that Mr. Baker had moderate difficulties in maintaining social functioning, noting that Mr. Baker experiences depressed mood intermixed with anger; however, he maintains eye contact, has normal speech, and has logical thought processes. *Id*. The ALJ found that Mr. Baker also had moderate difficulties with concentration, persistence, or pace, noting that the April and October 2011 mental status exams did not reveal any significant problems; rather, they showed he had only moderate issues with memory and constraint of judgment. *Id*. at 19-20. Finally, the ALJ noted that Mr. Baker has experienced only one or two episodes of decomposition, including

---

[5] Mr. Baker does not argue that he meets the requirements of paragraph C.

a hospitalization in July 2011 due to suicidal ideation. *Id*. at 20. Accordingly, the ALJ found that Mr. Baker did not meet or equal the requirements of paragraph B.

Mr. Baker first argues that his Global Assessment of Functioning ("GAF") scores prove he satisfies the requirements of paragraph B, as they indicated that he had serious symptoms. The Court does not agree. The ALJ correctly noted in footnote three of his decision that certain GAF scores, standing alone, do not automatically warrant a finding of disability or that a claimant equals a Listing. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score.") (quoting *Wilkins v. Barnhart*, 69 Fed. Appx. 775, 780 (7th Cir. 2003)).[6] The Court reads the ALJ's decision as considering Mr. Baker's ranging GAF scores—from a high of 58 to a low of 35—as one piece of evidence he considered when determining whether he met or medically equaled the requirements of paragraph B. In so doing, the ALJ did not err.

Mr. Baker next argues that the ALJ acted without a medical advisor-psychologist, relying instead on his own layperson's expertise,[7] ignored evidence that proved he was disabled, failed to give controlling weight to his treating physicians, cherry-picked certain reports while ignoring others, and failed to build an accurate and logical bridge to his conclusion. Mr. Baker has failed to direct the Court to any evidence—besides his GAF scores—that the ALJ ignored and/or failed to give substantial weight to. Mr. Baker also does not identify which treating physicians to

---

[6] Mr. Baker takes issue with the Commissioner and the ALJ's reliance on *Denton*, arguing that it is factually distinguishable because it involved a claimant who had a GAF score of 60. In fact, as noted above, the quote contained in the Commissioner's Response and in the ALJ's decision actually comes from *Wilkins*, a case in which the claimant had a GAF score of 40. Despite this GAF score, the Seventh Circuit still upheld the ALJ's conclusion that the claimant was not disabled. *See Wilkins*, 69 Fed. Appx. at 780.

[7] This argument was addressed above.

9

which the ALJ should have assigned significant weight. The Court is satisfied with the ALJ's thorough discussion of paragraph B and Mr. Baker's restrictions therein, and sees no error in his conclusion that Mr. Baker did not meet, or medically equal, the requirements of paragraph B of Listing 12.04.

### C. The ALJ's Credibility Determination

Mr. Baker next argues that the ALJ erred in assessing his credibility. The ALJ stated:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. at 21. Mr. Baker takes issue with this language. The Seventh Circuit has "repeatedly condemned the use of that boilerplate language because it fails to link the conclusory statements made with objective evidence in the record." *Moore v. Colvin*, ___ F.3d ___, 2014 WL 763223 (7th Cir. 2014) (citing *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012); *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)). However, "the use of such boilerplate language will not automatically discredit the ALJ's ultimate conclusion if the ALJ otherwise identifies information that justifies the credibility determination." *Id.* In this case, while the ALJ did include this "template" in his decision, he offered much more than a perfunctory analysis—the boilerplate language was immediately followed by a thorough and lengthy explanation for the ALJ's credibility determination.

In addition to the objective medical evidence he cited at length, R. at 21-24, the ALJ also noted the factors in SSR 96-7p, discussing, for example, Mr. Baker's daily activities, his lack of

10

medications, and his past treatment. *See* R. at 24-25.[8] He specifically noted which statements he did not find credible, noting that, for example, while Mr. Baker alleges debilitating neck and shoulder pain, he is currently taking no medications and has not sought out any physical therapy for this pain since 2006. He also notes that Mr. Baker alleges that his depression and anger issues are debilitating, yet his counselor noted that poor progress was due to his irregular involvement in treatment. In all, the Court is entirely satisfied with the thorough reasoning of the ALJ's credibility determination.

### D. The ALJ's Step Five Determination

Finally, Mr. Baker argues that the ALJ erred at Step Five because he gave an incomplete hypothetical to the VE at the hearing. Specifically, he argues that the ALJ "failed to account for the claimant's deficiencies in social functioning and concentration, persistence or pace." Pl.'s Brief at 19. The ALJ posited, in part, this hypothetical to the VE: "Work involved unskilled, simple, repetitive tasks, requiring no independent judgment regarding work processes. This individual should have only occasional superficial contact with the public and co-workers." R. at 51. Mr. Baker faults the ALJ for not including specific limitations in concentration, persistence, and pace. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[F]or most

---

[8] In his Reply, Mr. Baker again takes issue with the ALJ's treatment of his GAF scores, claiming that his refusal to consider this score was in violation of SSR 96-7p which requires an ALJ to consider the claimant's own statements of "[t]he location, duration, frequency, and intensity of the [his] pain or other symptoms." Mr. Baker argues that the GAF scores corroborated his own allegations. Again, the Court notes that GAF scores are one piece of evidence that an ALJ can consider in his decision. Further, the ALJ's RFC assessment reflects that he did find Mr. Baker's complaints to be credible—just not to the extent that Mr. Baker may have desired. Notwithstanding Mr. Baker's argument that the ALJ ignored the limitations as indicated by his GAF scores, the ALJ imposed several limitations in tailoring Mr. Baker's RFC. For example, the ALJ restricted Mr. Baker to simple, repetitive work that requires no independent judgment. He also noted that Mr. Baker should not be required to engage with the general public and should have only occasional, superficial contact with coworkers. These are consistent with his GAF scores and mental RFC exams.

11

cases, the ALJ should *refer expressly to limitations on concentration, persistence and pace in the hypothetical* in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.") (emphasis added). The problem with Mr. Baker's argument is that the ALJ found that Mr. Baker had moderate difficulties with concentration, persistence, and pace in evaluating whether he met the requirements of paragraph B at Step Three. *See* SSR 96-8p ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). This is distinguishable from *O'Conner-Spinner*, in which "[t]he state examiner's RFC determination explicitly noted that there were at least moderate limitations here, and the ALJ agreed with that determination." *O'Connor-Spinner*, 627 F.3d at 620.

In contrast, all of the following were marked "Not Significantly Limited" during Mr. Baker's November 2011 mental RFC assessment:

- the ability to remember locations and work-like procedures;
- the ability to understand a remember very short and simple instructions;
- the ability to carry out very short and simple instructions; the ability to maintain attention and concentration for extended periods;
- the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- the ability to sustain an ordinary routine without special supervision;
- the ability to make simple work-related decisions; the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[9]

---

[9] The only "Moderately Limited" marks Mr. Baker received were in his abilities to understand, remember, and carry out detailed instructions. Clearly, the RFC the ALJ crafted accounts for this limitation in that Mr. Baker is limited to simple, repetitive tasks that do not require his independent judgment. Further, while Mr. Baker was noted to be "Moderately Limited" in his ability to interact appropriately with the general public, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to get along with coworkers and peers, again, the ALJ's RFC accounts for these limitations as well. Mr. Baker is

12

R. at 520-21. In looking at the ALJ's RFC and the hypothetical given to the VE, it is clear that he accounted for all of Mr. Baker's limitations in concentration, persistence, and pace as well as in social functioning. The ALJ's hypothetical was entirely consistent with his RFC finding. Accordingly, the Court finds no reversible error.

### VI. CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 03/06/2014

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication

---

restricted to an environment where his exposure to the public is limited and he only has occasional, superficial contact with his coworkers.